STATE of Missouri, Plaintiff–
Respondent,

v.

Timothy John HUCKIN, Defendant–
Appellant.

No. 17996.

Missouri Court of Appeals,
Southern District,
Division Two.

March 2, 1993.

ment under the statute.

Joseph B. Phillips, Stockton, for defendant-appellant.

John A. Watkins, Pros. Atty., Dade County, Greenfield, for plaintiff-respondent.

FLANIGAN, Judge.

The trial court, sitting without a jury, found defendant Timothy Huckin guilty of driving while intoxicated, § 577.010,[1] and he was sentenced, as a prior offender, to a jail term of 14 days, 12 days of which were suspended for two years on unsupervised probation. Defendant appeals.

Defendant's first point is that the evidence was insufficient to support the verdict and the trial court erred in ruling otherwise because "there was not admissible evidence of intoxicated driving" for the reason that "the evidence failed to show

1. All references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

that the officer had probable cause as a matter of law to stop defendant's vehicle."

 The findings of the trial court in a jury-waived criminal case have the force and effect of a verdict of a jury. Mo. Const. art. I, § 22(a); *State v. Northern,* 472 S.W.2d 409, 411[3] (Mo.1971). Defendant's challenge to the sufficiency of the evidence requires this court to determine whether there is sufficient evidence from which a reasonable juror might have found him guilty beyond a reasonable doubt. *State v. Dulany,* 781 S.W.2d 52, 55[3] (Mo. banc 1989). We accept as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregard all evidence and inferences to the contrary. *Id.* This court considers any portions of defendant's evidence which would support a finding of guilty "because defendant, by putting on evidence, takes the chance of aiding the State's case." *State v. Johnson,* 447 S.W.2d 285, 287[2] (Mo.1969).

"A person commits the crime of 'driving while intoxicated' if he operates a motor vehicle while in an intoxicated or drugged condition." § 577.010.1.

State's witness James Hanak, a police officer for the city of Greenfield, testified that in the early morning of March 30, 1991, he was on duty while parked at the intersection of Wells Street and Highway 160. He observed a Chrysler, driven by defendant, heading south. Hanak testified: "The Chrysler appeared to swerve a couple of times as it was heading toward me. I followed it as soon as it passed my position. Huckin's driving was erratic. The Chrysler would drift toward the center line, the tire would hit the center line and drift back toward the shoulder of the road. This happened four times. I stopped the Chrysler with my activated red lights. I approached the vehicle and defendant rolled down the window. I could detect an odor of intoxicants coming from the vehicle. There was a woman passenger. Defendant's eyes were glassy and somewhat bloodshot and the pupils were dilated. There was a strong odor of intoxicants in the vehicle. I gave defendant some field sobriety tests.

He tried to do the one-leg stand test twice and failed it both times. I had him do a heel-to-toe test and he was unable to keep his balance. I placed him under arrest and read him his rights. He said he had had a couple of beers. I offered to give him a breathalyzer test. He didn't blow into the machine sufficiently to get a sample. I tried that more than once. I recorded it as a refusal. I observed him for half an hour. I have had 17 years in law enforcement and have observed people in an intoxicated condition. In my opinion he was intoxicated."

Defendant's wife testified as a defense witness that prior to being stopped by Officer Hanak she and defendant had been at a tavern and shared a pitcher of beer. Defendant admitted that he drank as many as three mugs of beer at the tavern.

The state introduced evidence of one prior conviction of an alcohol-related traffic offense.

In support of his first point, defendant argues that the state's evidence showed that he was driving his vehicle within the speed limit and "drifting between the center line and the shoulder in his lane of traffic but not going over either." The foregoing conduct, says defendant, "does not constitute probable cause to believe that defendant is driving while intoxicated, and it is an unconstitutional stop and seizure of defendant and all evidence obtained from defendant after the stop was not admissible and defendant should have been acquitted."

Defendant attempts to base his argument upon the Fourth Amendment to the U.S. Constitution proscribing unreasonable searches and seizures. Defendant's first point makes no mention of the Fourth Amendment, and defendant did not comply with the requirements for preserving the constitutional issues for appeal. Those requirements are set forth in *State v. Root,* 820 S.W.2d 682, 685 (Mo.App.1991), and need not be re-stated. This court, in the exercise of its discretion under Rule 30.20, reviews defendant's first point for possible plain error. The state makes no appearance as respondent.

In *Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979), the Court said:

> [W]e hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.... We hold only that persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers.

■ There is a difference between the circumstances which justify a law enforcement officer in making a traffic stop and the circumstances which constitute probable cause for the officer making an arrest for driving while intoxicated. In order to make a valid traffic stop, the officer need only have a reasonable suspicion that criminal activity is taking place when he makes the stop. *Wallace v. Director of Revenue,* 754 S.W.2d 900, 902 (Mo.App.1988), citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). To similar effect see *Downs v. Director of Revenue,* 791 S.W.2d 851, 853[3] (Mo.App.1990); *Edwards v. Director of Revenue,* 769 S.W.2d 483, 484 (Mo.App.1989); *State v. Barks,* 711 S.W.2d 892, 898 (Mo.App.1986). "Such suspicion may arise from an observation of conduct not constituting a traffic violation but merely an unusual operation [of the vehicle]." *Wallace, supra,* at 902; *Edwards, supra,* at 484. "The facts and inferences need not exclude every possible interpretation save criminal activity." *Barks, supra,* at 898.

■ An officer has probable cause to make an alcohol-related traffic arrest when he observes an unusual or illegal operation of a motor vehicle and "observes indicia of intoxication when coming into contact with the motorist." *Kranz v. Director of Revenue,* 764 S.W.2d 508, 510 (Mo.App.1989); *Wallace v. Director of Revenue, supra,* at 902; see also *Aron v. Director of Revenue,* 737 S.W.2d 718, 719 (Mo.banc 1987). Probable cause to arrest for an alcohol-related traffic violation may be developed after a motorist is otherwise properly stopped. *Edwards v. Director of Revenue, supra,* at 484; *Wallace, supra,* at 902; *Aron, supra,* at 719.

■ Evidence procured as a result of a pretextual arrest is inadmissible because it is obtained as a result of an arrest made invalid under the Fourth Amendment. *State v. Mease,* 842 S.W.2d 98, 105[2] (Mo. banc 1992). However, the Fourth Amendment analysis of the validity of an arrest involves an objective assessment of the officer's actions in light of the facts and circumstances confronting him at that time. *Id.,* citing *Maryland v. Macon,* 472 U.S. 463, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985), quoting *Scott v. United States,* 436 U.S. 128, 137, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978).

■ Defendant does not argue that his arrest by Officer Hanak was illegal.[2] In view of Hanak's testimony with regard to what he observed of defendant's condition and conduct after the traffic stop had been made, such an argument would fail.

The essence of defendant's argument is that the initial traffic stop was illegal because Officer Hanak did not have a reasonable suspicion, before making the stop, that criminal activity was taking place. Defendant emphasizes that although Hanak saw defendant's vehicle "drifting" or weaving four times, all of the drifting or weaving took place on defendant's right hand side of the road. This argument has no legal validity.

---

**2.** Section 577.039 reads, in pertinent part:

An arrest without a warrant by a law enforcement officer ... for a violation of section 577.-010 ... is lawful whenever the arresting officer has reasonable grounds to believe that the person to be arrested has violated the section, whether or not the violation occurred in the presence of the arresting officer; provided, however, that any such arrest without warrant must be made within one and one-half hours after such claimed violation occurred.

Authorities cited earlier hold that reasonable suspicion, on which a valid traffic stop may be made, may arise from an observation of conduct not constituting a traffic violation but merely an unusual operation of the vehicle. "Weaving within the lane of traffic in which the vehicle is traveling provides sufficient basis for an investigatory stop of a motor vehicle." *People v. Loucks*, 135 Ill.App.3d 530, 90 Ill.Dec. 286, 287, 481 N.E.2d 1086, 1087[1] (1985). To similar effect see *People v. Houldridge*, 117 Ill.App.3d 1059, 73 Ill.Dec. 672, 674–675, 454 N.E.2d 769, 771–772 (1983); *State v. Morrison*, 392 So.2d 1037, 1043[5] (La. 1980).

In *U.S. v. Harris*, 928 F.2d 1113, 1116 (11th Cir.1991), the court said:

The search in this case was not the product of a "pretextual" traffic stop. The search resulted from circumstances that caused Sergeant Penn to suspect a sinister purpose for defendant's presence. Those circumstances were manifested following the stopping of the motor home in which defendant was traveling. The motor home was observed weaving within its lane of travel. The patrolman observed the manner in which the vehicle was being operated. He questioned whether the operator was sleepy or intoxicated. The patrolman's actions were appropriate.

A law enforcement officer may conduct a brief investigative stop of a vehicle, analogous to a *Terry*-stop, if the seizure is justified by specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. An investigatory stop which is solely based upon inarticulate hunches or unparticularized suspicion is invalid. Further, investigatory stops are invalid as pretextual unless a reasonable officer *would* have made the seizure in the absence of illegitimate motivation. (Citing authorities—emphasis in original.)

In *Harris* the court quoted with approval the following language from the district court's order denying the defendant's motion to suppress.

The testimony showed that Harris weaved into the emergency lane on two separate occasions during a one-mile stretch on Interstate 75. Deputy Peavy did not make the stop until Harris weaved the second time. A reasonable officer would have concluded that Harris was either driving under the influence in violation of state law, *or falling asleep at the wheel. Since the stop would have been justified under either conclusion, it was not unconstitutional.* (Emphasis added.)

Similarly, in *State v. Marshell*, 825 S.W.2d 341 (Mo.App.1992), defendant was found guilty of possessing marijuana. Defendant was a passenger in a motor home driven by another person. A highway patrolman observed the motor home drifting back and forth within its lane of travel. The patrolman stopped the motor home to see if the driver was intoxicated or sleepy. A subsequent search of the vehicle disclosed the marijuana.

On appeal, the defendant contended that the marijuana was illegally seized in that the pretextual nature of the traffic stop was unconstitutional and invalidated defendant's consent to the search. Rejecting that contention, this court said, at 347:

Prior to stopping defendant's vehicle, Officer Hanak noted that defendant's "driving was erratic." The officer observed that four times defendant's vehicle drifted to the center line and then drifted back toward the shoulder. This court holds that those circumstances gave rise to a reasonable suspicion that criminal activity was taking place and that the traffic stop was valid. Defendant's first point has no merit.

■ Defendant's second point is that the trial court erred in finding that defendant was a prior offender within the meaning of § 577.023.1(3) because the state offered evidence of only one prior intoxication-related traffic offense. This point is valid. In *State v. Stewart*, 832 S.W.2d 911, 914 (Mo.banc 1992), the court held that two prior convictions are necessary to establish prior offender status.

"Driving while intoxicated is for the first offense, a class B misdemeanor." § 577.-010.2. The trial court properly convicted

the defendant of driving while intoxicated but erroneously treated him as a prior offender. This court reverses the judgment, vacates the sentence, and remands the case to the trial court for sentencing within the range of punishment for a class B misdemeanor.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

MONTGOMERY, P.J., and PREWITT, J., concur.